UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS A. ORTEGA,<br><br>             Plaintiff,<br><br>        v.<br><br>ROBERT BABASA, et al.,<br><br>             Defendants. | Case No. 14-cv-03783-HSG (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; STAYING ACTION AND REFERRING FOR SETTLEMENT PROCEEDINGS**<br><br>Re: Dkt. Nos. 20, 33 |

**INTRODUCTION**

On August 8, 2014, plaintiff Carlos Armando Ortega, an insanity acquittee housed at Napa State Hospital, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against staff at the Santa Clara County Jail ("SCCJ"), where he was housed as a post-arraignment pretrial detainee in 2007. On December 16, 2014, the Court screened plaintiff's first amended complaint ("FAC"), found that it stated a cognizable claim for excessive force as against SCCJ correctional officers Robert Babasa and John Kelly Villagomez and SCCJ captain David Sepulveda, and ordered them served.

Plaintiff's excessive force claim was also the subject of a 2011 action brought by plaintiff in this court. *Ortega v. Barbasa*, No. C 11-1003 SBA (PR). The 2011 action was dismissed without prejudice on the grounds that plaintiff failed to exhaust administrative remedies prior to filing suit. *See* Case No. C 11-1003 SBA (PR) at Dkt. No. 50.

On February 6, 2015, plaintiff filed a motion for summary judgment. On March 6, 2015, defendants filed a cross-motion for summary judgment. Both motions are now before the Court for review.

# BACKGROUND

## I.  Plaintiff's Version

Plaintiff alleges that on September 5, 2007, defendant correctional officers Robert Babasa and John Kelly Villagomez used excessive force while transporting plaintiff to the mental health ward at SCCJ.  FAC at 3.  Plaintiff claims that both officers handcuffed his wrists through the "tray slot" so tightly that his wrists were cut three-quarters of an inch deep and bleeding significantly.  *Id.* at 3-4.  Defendants then applied a chain to the middle of the handcuffs, which pulled plaintiff's arms, causing significant pain.  *Id.* at 3(A).  Plaintiff was then forced to walk backwards in ankle chains, was punched in the face by each defendant six times, and his toes were stepped on, causing both of plaintiff's big toes to bleed.  *Id.* at 3(B).  Plaintiff claims that he could not move his right wrist for three weeks and that he lost both of his big toenails after this incident. *Id.*  Plaintiff further alleges that defendant Captain David Sepulveda witnessed and video-recorded all of these events.  *Id.* at 3(C).  According to plaintiff, defendant Sepulveda did nothing to stop the officers' actions, and knew that both defendants Babasa and Villagomez were not supposed to interact with plaintiff due to other, unrelated incidents.  *Id.*

## II.  Defendants' Version

Defendants offer an entirely different version of the facts and assert that the evidence shows they used constitutionally appropriate force when transporting plaintiff.  On September 4, 2007, the day before the alleged incident involving excessive force, plaintiff shattered his cell window and attacked a correctional officer with a metal bar, causing the officer to suffer a head injury.  Babasa Decl. at ¶ 3.  A second officer sustained an eye injury.  *Id.*  The main jail's Emergency Response Team ("ERT") was called to extract plaintiff from his cell following the incident.  *Id.* at ¶¶ 2-3.  ERT officers pepper-sprayed plaintiff after he refused to comply with orders, including orders that he put his weapon down.  *Id.* at ¶ 4.  ERT officers then placed plaintiff in handcuffs and ankle restraints to transfer him to the mental health unit.  *Id.* at ¶ 5.  At various times during the transfer, plaintiff resisted the restraints and injured a third officer in the

2

process. *Id.* After arriving at the mental health unit, plaintiff was secured in a safety cell and had his head and face flushed with water to decontaminate the effects of the pepper spray. *Id.* at ¶ 6. A nurse medically cleared him following examination. *Id.* Plaintiff remained in the safety cell, with routine monitoring, until the next day. Chyorny Decl. at ¶ 6.

Defendants maintain that all of their actions on September 5, 2007 were reasonable in light of what had happened the previous day, and deny that any excessive force was used. Defendants Babasa and Villagomez transferred plaintiff from the mental health unit to a solitary cell in the jail's administrative segregation unit. Babasa Decl. at ¶ 7. The correctional officers used handcuffs, ankle restraints, and manual restraint holds during this transfer due to plaintiff's violent history. *Id.* at ¶ 7. After the transfer, plaintiff did not complain to the officers of any injuries, nor did he request medical attention. *Id.* It appears from the nurse's notes in the "Safety Flow Cell Sheet," that the transfer took place between 6:00 a.m. and 7:00 a.m. on September 5, 2007. Chyorny Decl. at ¶ 6, Ex. A.

Defendants also assert that the medical records indicate that no excessive force was used on September 5, 2007. At 8:00 a.m. that day plaintiff was assessed by a mental health worker at SCCJ. Chyorny Decl. at ¶ 7, Ex. B. While plaintiff did not exhibit signs of distress, he did complain of injuries to his foot. *Id.* Upon examination at 8:30 a.m., plaintiff's foot was "bleeding after injury in transport of inmate by officers." *Id.* at ¶ 8, Ex. C. Medical staff again examined plaintiff at 2:00 p.m. on September 5, 2007. Chyorny Decl. at ¶ 9, Ex. B. The nurse's notes indicate that plaintiff's wrists were reddened, but plaintiff had good range of motion in his wrists and could move his fingers "without any difficulty." *Id.* Plaintiff did not have any cuts or abrasions on his wrists and did not complain of any loss of movement. *Id.* The nurse also examined an abrasion on plaintiff's second toe that had no active bleeding but was tender to the touch. *Id.* at ¶ 10. He had no broken toenails. *Id.*

Defendant captain Sepulveda asserts that, during his tenure as a captain, he never videotaped a cell extraction or an inmate being moved. Sepulveda Decl. ¶ 9.

3

**DISCUSSION**

**I.      Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).  The nonmoving party must show more than "the mere existence of a scintilla of evidence."  *In re Oracle Corp. Sec. Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252).  "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id.* (citing *Liberty Lobby,* 477 U.S. at 252).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

4

evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. *The Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, plaintiff's verified FAC (Dkt. No. 9), is considered in evaluating the cross-motions for summary judgment.

## II. Analysis

Plaintiff's motion for summary judgment is primarily an argument on the merits. Defendants' cross-motion sets forth three arguments: (1) as with his 2011 action, plaintiff has again failed to exhaust administrative remedies; (2) there is no evidence of excessive force; and (3) defendants have qualified immunity.[1]

//

---

[1] Although the events giving rise to this action took place in 2007, defendants do not argue that the claims are barred by the statute of limitations. Nor will the Court *sua sponte* consider whether plaintiff's claims are time-barred given: (1) his prior action was dismissed without prejudice to re-filing following proper exhaustion; and (2) his representations that he has continued his attempts to exhaust administrative remedies. *See Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) ("the statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process").

### A. Failure to Exhaust

First, defendants argue that plaintiff failed to exhaust administrative remedies with respect to his excessive force claims. The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Only those individuals who are prisoners within the definition of 42 U.S.C. § 1997e(h) at the time they file suit must comply with the exhaustion requirement of § 1997e(a), such that a person no longer incarcerated does not have to exhaust administrative remedies pursuant to the PLRA as a prerequisite to filing an action relating to the conditions of his or her incarceration. *Talamantes v. Leyva,* 575 F.3d 1021, 1023-24 (9th Cir. 2009). The PLRA defines "prisoner" as, "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law . . ." 42 U.S.C. § 1997e(h). Because plaintiff was adjudicated not guilty by reason of insanity and has been involuntarily committed to Napa State Hospital, he is not a prisoner as defined by the PLRA. *See Mullen v. Surtshin*, 590 F. Supp. 2d 1233, 1240 (N.D. Cal. 2008). Therefore, the PLRA and its exhaustion requirements do not apply to plaintiff in the current action.

Defendants are therefore not entitled to summary judgment based on lack of exhaustion.

### B. Merits Analysis

The Due Process Clause of the Fourteenth Amendment protects a post-arraignment pretrial detainee from the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)). Force does not "amount to punishment" if the condition imposed is incidental of some other legitimate governmental purpose. *Bell*, 441 U.S. at 538. Although the Due Process Clause protects pretrial detainees, "the Fourth Amendment sets the 'applicable constitutional limitations' for considering

6

claims of excessive force during pretrial detention." *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002) (quoting *Pierce v. Multnomah Cnty.*, 76 F.3d 1032, 1043 (9th Cir. 1996)). Whether the force was excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. The Court must balance the nature and quality of the intrusion against the countervailing governmental interests at stake. *Id.* at 396.

### 1. Defendants' Motion

Defendants argue that officers Babasa and Villagomez used only reasonable force when transferring plaintiff on September 5, 2007. Specifically defendants argue that the use of leg irons, handcuffs, and manual restraint control holds were required given plaintiff's behavior the day before, specifically plaintiff's assault and his volatility during cell extraction. Defendants' argument that no reasonable jury could find for plaintiff is based on viewing the evidence in the light most favorable to themselves. However, on defendants' motion for summary judgment, the evidence must be viewed in the light most favorable to plaintiff. Plaintiff maintains that each officer punched him in the face six times and stomped on his toes, and that his wrists were severely injured by defendants' actions. These allegations, as verified in the FAC, directly contradict defendants' version of events.

Defendants also argue that because plaintiff suffered only minor injuries, a lack of evidence supports his claim. This argument is unpersuasive. Although the extent of injury is one factor that suggests whether the force used was excessive, *see Hudson v. McMillian*, 503 U.S. 1, 7 (1992), injury and force are only imperfectly correlated, and it is the latter that ultimately counts. *See Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010) (inmate who was gratuitously beaten by guards did not lose his ability to pursue excessive force claim merely because he had the good fortune to escape without serious injury). Defendants also represent in their motion that plaintiff attributed his injuries to the September 4, 2007 altercation and cell extraction. However, the Court finds the September 5, 2007 medical records ambiguous as to when the injuries occurred, and concludes

7

that plaintiff's statement that he was "primarily concerned about injuries resulting from altercation," s*ee* Chyorny Decl. Ex. B, does not compel defendants' conclusion.

Although defendants do not specifically address the claims against defendant Sepulveda, the Court finds that plaintiff's allegations that Sepulveda witnessed the events of September 5, 2007 but did not nothing to stop them are sufficient to preclude summary judgment. An official can be liable for failing to intervene if he or she is present when another official uses excessive force against a prisoner. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995); *see also Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (evidence of sergeant's presence during the use of excessive force and sergeant's failure to bring his subordinates under control could support liability under § 1983).

Defendants are therefore not entitled to summary judgment on the merits of plaintiff's excessive force claim relating to the events of September 5, 2007.

The FAC vaguely claims that defendants used excessive force again on September 30, 2007. *See* FAC at 3, 3(B). Plaintiff provides no evidence, however, showing that defendants used excessive force on September 30, 2007. Defendants have submitted evidence showing that plaintiff was discharged from the mental health unit back to his cell on September 30, 2007. Chyorny Decl. ¶ 17. Nothing in the record shows that he was involved in any altercation or use of force during the transfer. Defendants argue that a lack of evidence supports this claim. The Court agrees. On summary judgment, where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Here, there is an absence of evidence to support plaintiff's case. Defendants are therefore entitled to summary judgment on plaintiff's excessive force claim relating to the events of September 30, 2007.

//

//

### 2. Plaintiff's Motion

On plaintiff's cross-motion for summary judgment, the evidence must be viewed in favor of defendants, as the nonmoving parties. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). Because plaintiff bears the burden of proof on all issues at trial, on his motion for summary judgment he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. *See Celotex*, 477 U.S. at 323. Defendants submit evidence showing that, in transferring plaintiff on September 5, 2007, they used only leg irons, handcuffs, and manual restraint control holds. Defendants also submit plaintiff's medical records which contradict plaintiff's account of the injuries he sustained. Defendants' evidence, taken in the light most favorable to them, raises a dispute of material fact whether the amount of force used in transferring plaintiff was reasonable.

Plaintiff is therefore not entitled to summary judgment on the merits.

### C. Qualified Immunity

Defendants argue that, assuming their actions are found to be unconstitutional, it would not have been clear to a reasonable official that such conduct was unlawful and that therefore they are entitled to qualified immunity.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (overruling requirement in *Saucier v. Katz*, 533 U.S. 194 (2001), that court ruling on qualified immunity claim consider first prong of test before addressing second prong). The court may exercise its discretion in deciding which prong to address first. *Id.*

The Court finds granting summary judgment on grounds of qualified immunity is improper in this case. Resolving all factual disputes in plaintiff's favor at this stage, the Court concludes that if plaintiff's version of events is true, the defendants violated his clearly established right to be free from excessive force. *See Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003) ("the law regarding a prison guard's use of excessive force was clearly established by 1994"). Granting summary judgment on the ground of qualified immunity is "improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

Here, under plaintiff's version of the facts, no reasonable officer could believe that punching the face, stomping the feet, and applying handcuffs tightly enough to break the skin of a prisoner who is in restraints and not actively resisting is permitted under the Fourteenth Amendment. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (finding no qualified immunity where law was clearly established at time of defendant's arrest that arresting officers' conduct in punching, gang tackling, and using hobble restraints to take defendant into custody could have been unconstitutional); *Robins*, 60 F.3d at 1442 (finding that prison officials can be held liable for failure to intervene). Where, as here, "the material, historical facts" are in dispute, the availability of qualified immunity does not turn solely on a question of law, and the district court is precluded from granting summary judgment on qualified immunity grounds. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1211 (9th Cir. 2008) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (1994)) (holding that the existence of issues of material fact precludes a court from granting judgment as a matter of law on qualified immunity grounds, and observing that "sending the factual issues to the jury but reserving to the judge the ultimate 'reasonable officer' determination leads to serious logistical difficulties").

While resolution of the factual issues may well relieve defendants of any liability in this case, if plaintiff's version of the facts were to prevail at trial, a reasonable jury could conclude that defendants inflicted unnecessary and wanton force in violation of plaintiff's constitutional rights.

Defendants are therefore not entitled to summary judgment on grounds of qualified immunity.

### III.     Defendant John Kelly Villagomez

The officer who joined Officer Babasa in transferring plaintiff to the security solitary cell on September 5, 2007 was named Jose Villagomez. See Babasa Decl. ¶ 7. It appears he was erroneously served as John Kelly Villagomez in both this action and in plaintiff's 2011 action. In the 2011 action, a J. Villagomez appeared and waived service of summons. *See* Case No. C 11-1003 SBA (PR) at Dkt. No. 17-1. In this action, although summons on a John Kelly Villagomez was returned executed on January 23, 2015 (*see* Dkt. No. 17), counsel for defendants state that the Santa Clara Department of Corrections has never employed such a person and thus, they do not answer on his behalf (*see* Dkt. No. 31 at 2).

Accordingly, Jose Villagomez will be ordered served pursuant to the Court's instructions below.

### CONCLUSION

For the reasons set forth above,

1. Defendants' motion for summary judgment is DENIED as to the September 5, 2007 excessive force claim and GRANTED as to the September 30, 2007 excessive force claim.

2. Plaintiff's cross-motion for summary judgment is DENIED.

3. The Clerk shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the FAC in this matter (Dkt. No. 9), a copy of the Court's order of service (Dkt. No. 10), and a copy of this order on Jose Villagomez at the Santa Clara Department of Corrections.

4. The Clerk is further directed to correct the spelling of Defendants Babasa's and Villagomez's names on the court docket by substituting "Babasa" for "Barbasa" and "Jose Villagomez" for "John Kelly Villagomez."

5. The September 5, 2007 excessive force claim is hereby REFERRED to Magistrate

11

Judge Nandor Vadas for settlement proceedings. Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Vadas's calendar will permit. Magistrate Judge Vadas shall coordinate a place, time, and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.

The Clerk shall send Magistrate Judge Vadas a copy of this order.

6. The case is STAYED pending the settlement proceedings. The Clerk shall ADMINISTRATIVELY CLOSE this case until further order of the Court.

This order terminates Docket Nos. 20 and 33.

**IT IS SO ORDERED.**

Dated:  9/3/2015

HAYWOOD S. GILLIAM, JR.
United States District Judge